(No. 61365.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY NEAL, Appellant.

*Opinion filed November 21, 1985.*

Daniel D. Yuhas, Deputy Defender, and Jeffrey D. Foust, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Jerry Neal, a State police officer, was convicted by a jury in the circuit court of Champaign

County for the offenses of official misconduct (Ill. Rev. Stat. 1981, ch. 38, par. 33—3) and forgery (Ill. Rev. Stat. 1981, ch. 38, par. 17—3). The appellate court, in affirming under Supreme Court Rule 23 (87 Ill. 2d R. 23), rejected his contention that the trial court erred in denying his motion to suppress evidence seized in a search of the patrol car, which was assigned for his use. (129 Ill. App. 3d 1163.) We granted Neal's petition for leave to appeal (94 Ill. 2d R. 315).

The question presented is whether the defendant had a reasonable expectation of privacy as to the State-owned raincoat pouch kept in his patrol car, so as to have required police to obtain a warrant prior to conducting a search of the pouch.

On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable. (Ill. Rev. Stat. 1983, ch. 38, par. 114—12(b); *People v. Hoskins* (1984), 101 Ill. 2d 209, 212; *People v. Berg* (1977), 67 Ill. 2d 65, 68; 3 W. LaFave, Search and Seizure sec. 11.2(b) (1978).) A reviewing court will not disturb a trial court's determination on a motion to suppress evidence unless it is manifestly erroneous. *People v. Hoskins* (1984), 101 Ill. 2d 209, 212; *People v. Conner* (1979), 78 Ill. 2d 525, 532; *People v. Clay* (1973), 55 Ill. 2d 501, 505.

On May 15, 1982, Charles Traylor, a sergeant in the Illinois State Police, received a telephone call from James Pejchl. Pejchl was concerned about irregularities appearing in a traffic citation he had been given by a police officer named, according to the citation, "Myron Harris." When served with the citation, Pejchl had posted a cash bond. Traylor's investigation determined that there was no State trooper named Myron Harris. An examination of the record of citations issued by officers in the district directed investigative attention to the defendant.

Sergeant Traylor notified the defendant on May 25 that his patrol car was going to be searched and proceeded in the defendant's absence to make a search of the car. Traylor found the gray, unmarked, zippered raincoat pouch, which, together with a raincoat, is issued to every officer, under the front seat of the car on the passenger side. Noticing that the pouch contained something other than a raincoat, Traylor unzipped the pouch and removed 12 or 13 citations which were later determined not to have been officially issued. All of the citations were signed with the name "Myron Harris." Investigation disclosed that the citations were issued to persons who then gave cash bonds in amounts of $50 to $70, which were never turned over to the clerk of the circuit court. When the sergeant found the citations, he discontinued the search.

At the hearing on the motion to suppress the citations as evidence, Traylor testified that although the patrol car at the time of the search was assigned to the defendant, the car was subject at any time to reassignment to another officer. He stated that although officers were permitted to keep personal property in the patrol cars assigned to them, the vehicles and any official items in them were periodically inspected by supervisors with or without notice to the officers.

Corporal Richard Kaelin, the defendant's immediate supervisor, testified that though a patrol car is assigned to a particular officer, it could be reassigned at any time, including during the officer's shift. He said that the vehicles might be inspected at any time, whether the officer was on duty or not, and with or without notice to him, for the purpose of insuring that the officer was properly maintaining the vehicle and its equipment. Kaelin testified that each officer is issued a raincoat and pouch which are occasionally inspected for dirt and mildew. Although such an inspection is usually done in the officer's

presence as part of a uniform inspection, the officer need not be present.

The defendant contends that he had a reasonable expectation of privacy in the raincoat pouch because it had been issued to him for his "exclusive" use. Too, he says, a claim of right to a search of the patrol car should be distinguished from a claim of right to a search of the raincoat pouch, in that the car was clearly identifiable as State property, whereas, the pouch, being unmarked, could have been personal property of the defendant.

The situation here, the defendant says, is comparable to the one in *United States v. Blok* (D.C. Cir. 1951), 188 F.2d 1019, which involved a search of a government employee's desk. The court held there that a government employee had a reasonable expectation of privacy in her desk since it may have contained personal property. The court said her desk could not be searched for evidence of criminal activity unrelated to her job without a search warrant. The defendant argues that as the defendant had an exclusive right to the use of the raincoat pouch, and was permitted to keep personal property in the patrol car, any warrantless search was unreasonable under *Blok*.

The State denies that the defendant could have had a reasonable expectation of privacy in the raincoat pouch. He was aware of the practice of periodic inspections of patrol cars and equipment and knew that a car could be reassigned at any time. Further, the State says that the trial court, in denying the motion to suppress, found that the defendant was aware that the patrol car assigned for his use was subject to periodic inspections and that he was or should have been aware that an article such as the raincoat pouch could have been opened for inspection. Too, the trial court stated that evidence showed that the patrol car was not for the defendant's exclusive use. The defendant, thus, had no reasonable expectation

of privacy in the patrol car, the raincoat pouch or the raincoat.

The fourth amendment to the Constitution of the United States guarantees freedom from unreasonable searches and seizures. It does not protect against all searches but only those which are unreasonable governmental intrusions. (*People v. Richards* (1983), 94 Ill. 2d 92, 95; *People v. Robinson* (1976), 62 Ill. 2d 273, 276.) If there is no such intrusion there is no search and seizure subject to the warrant clause of the amendment. (*Illinois v. Andreas* (1983), 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3323-24.) The amendment serves to protect persons rather than places. *Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511; *People v. Bayles* (1980), 82 Ill. 2d 128, 134; *People v. Nunn* (1973), 55 Ill. 2d 344, 353.

In considering the defendant's contention, one must determine "whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." (*Smith v. Maryland* (1979), 442 U.S. 735, 740, 61 L. Ed. 2d 220, 226, 99 S. Ct. 2577, 2580.) This determination requires the favorable resolution of two inquiries. "The first is whether the individual [complaining of the search], by his conduct, has 'exhibited an actual (subjective) expectation of privacy' [citation] ***. The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable"' [citation] ***." (*Smith v. Maryland* (1979), 442 U.S. 735, 740, 61 L. Ed. 2d 220, 226-27, 99 S. Ct. 2577, 2580, citing *Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516-17 (Harlan, J., concurring). Accord, *People v. Richards* (1983), 94 Ill. 2d 92, 95; see also 1 W. LaFave, Search & Seizure sec. 2.1 (1978).) Ap-

plying this analysis, the defendant "exhibited an actual (subjective) expectation of privacy" as to the pouch and traffic citations. He placed the citations in the pouch, closed it, and put it under the front seat of the patrol car. By concealing the citations within the pouch, and the pouch itself, the defendant exhibited a subjective expectation that the citations would remain private.

This does not end the analysis of the question. We must consider whether the defendant's expectation is "one that society is prepared to recognize as reasonable." In evaluating the reasonableness of the defendant's expectation of privacy, we must consider a number of factors: the patrol car and the pouch were State owned, as was the raincoat; the raincoat and the patrol car were subject to periodic inspections by the defendant's superiors under the policy and practice of the Illinois State Police; the inspections conducted were both with or without notice to the officer concerned and were within or without his presence; the defendant was aware of such inspections and the manner in which they were conducted; and the inspection, as well as the search here, was limited to State-owned property related to the defendant's employment and duties.

Based upon these considerations, it cannot be said that the defendant, as a member of the State Police and under its policy, could have held a reasonable expectation of privacy on the ground that he would not be subject to a supervisor's search without warrant of the job-related vehicle and equipment. The trial court's denial of the motion to suppress was not manifestly erroneous.

There have been holdings similar to the one we make here. In *People v. Tidwell* (1971), 133 Ill. App. 2d 1, under resembling circumstances the appellate court upheld the warrantless search of a locker assigned to and used by a Cook County jail guard. The locker facilities were under the control of administrative officials who as-

signed the lockers to the guards, which lockers were subject to search at any time. The court said that the "basic right of access to the locker" was with the jail administration and not the defendant.

*United States v. Bunkers* (9th Cir. 1975), 521 F.2d 1217, involved a postal employee who was suspected of theft from the mails. After charting employee work schedules, postal inspectors focused their investigation upon the defendant. They observed her take a postal package into the locker room and return without the package. The inspectors requested Bunker's supervisors to search her locker, and packages from the mails were found. In upholding the warrantless search, the court acknowledged that Bunker "exhibited an actual (subjective) expectation of privacy" by placing the packages in her locker but found it incredible that any postal employee could have a reasonable expectation of privacy as to a work locker. Employees knew that postal inspectors under regulations had the right to inspect employees' lockers at any time. Too, the court stated that it declined to believe that society was prepared to recognize that Bunkers had a reasonable expectation of privacy in the use of a government-owned/employment-related locker as a place for storing stolen postal packages. *United States v. Bunkers* (9th Cir. 1975), 521 F.2d 1217, 1220.

In *Shaffer v. Field* (C.D. Cal. 1972), 339 F. Supp. 997, *aff'd* (9th Cir. 1973), 484 F.2d 1196, the court upheld a warrantless search of a station house locker assigned to a deputy sheriff. The evidence showed that the lockers assigned to deputy sheriffs were owned by the sheriff's department; the commander kept a master key and combination to all lockers; the lockers and locks could be changed at will; and the lockers had been searched by the commanders without the deputies' permission on at least three prior occasions. The court held that the sheriff did not have a reasonable expectation of privacy in

his locker. *Shaffer v. Field* (C.D. Cal. 1972), 339 F. Supp. 997, 1003.

The decisions that the defendant cites can be distinguished. In *United States v. Blok* (D.C. Cir. 1951), 188 F.2d 1019, which was described earlier in this opinion, the employee had exclusive use of her desk. The search made of it was for purposes unrelated to her job; the offense involved was larceny and was also unrelated to her work; the search was not made under any valid regulation; and the search was not conducted by the defendant's superiors but rather by a police officer. Also, the court intimated that had the defendant's superiors, for an official purpose, searched her desk for governmental property, the result might have been different. *United States v. Blok* (D.C. Cir. 1951), 188 F.2d 1019, 1021.

In *United States v. McIntyre* (9th Cir. 1978), 582 F.2d 1221, electronic eavesdropping was conducted of a police official's conversations in his office. Unlike here, there was no showing of a "regulatory scheme or specific office practice which would have alerted [the police official] to expect random monitoring of his conversations." 582 F.2d 1221, 1224.

For the reasons given, we hold that there was no error in deciding that the defendant had no reasonable expectation of privacy in the raincoat pouch. The judgment of the appellate court is affirmed.

*Judgment affirmed.*